**Philip G. DUTTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–6767.**

Court of Appeals of Alaska.

Jan. 8, 1999.

---

**37.** Instruction No. 31 states:

> Rosebrock has requested that you award a separate amount of money in order to punish VECO and to deter VECO and others from repeating similar acts. You may award such an amount of money only if you have decided that VECO is liable on one or more of Rosebrock's claims, and if you decide that VECO's conduct which forms the basis of your verdict was outrageous. VECO's conduct was outrageous if it was the result of maliciousness, bad motive, or was undertaken with a reckless indifference to Rosebrock's interests and rights.
>
> Rosebrock must prove the outrageousness of VECO's conduct by clear and convincing evidence. An alleged fact is established by clear and convincing evidence if the evidence induces belief in your minds that the alleged fact is highly probable. It is not necessary that the alleged fact be certainly true or true beyond a reasonable doubt or conclusively true. However, it is not enough to show that the alleged fact is more likely than not true.

Appearances: Kevin Shores, Assistant Public Defender, Juneau, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## O P I N I O N

MANNHEIMER, J.

This appeal requires us to interpret a contract—a plea bargain. Philip G. Dutton was charged with third-degree assault. The State offered to reduce this charge to a misdemeanor (fourth-degree assault), conditioned on Dutton's also pleading guilty to a federal felony charge arising from the same episode. Dutton accepted the offer: he pleaded guilty in federal court, and then he was sentenced on the misdemeanor assault charge in state court. Six months later, however, Dutton withdrew his federal plea.

Dutton's withdrawal of his federal plea raises two questions: First, did Dutton materially breach his plea bargain with the State when, following his state sentencing, he withdrew his federal plea? Second, assuming that Dutton's withdrawal of his federal plea was a material breach of his plea bargain with the State, could the State reinstate the original felony charge?

For the reasons explained here, we conclude that Dutton's withdrawal of his federal plea was a material breach of his plea agreement with the State, and we further conclude that the double jeopardy clause did not prohibit the superior court from vacating Dutton's misdemeanor conviction and reinstating the original third-degree assault charge.

*Underlying facts*

Philip G. Dutton faced both state and federal felony charges stemming from his conduct in Glacier Bay National Park. The state felony charge was third-degree assault: the State asserted that Dutton had aimed a .44 magnum handgun at a man (Dan Foley) who happened upon Dutton's campsite, and that Dutton had threatened to shoot Foley.

To resolve this assault charge, Dutton and the State entered into a plea agreement. The State agreed to reduce the assault charge to fourth-degree assault (a misdemeanor), and the State further agreed that Dutton would receive a sentence of 12 months' imprisonment with 8 months suspended (4 months to serve), plus forfeiture of the .44 magnum. For his part, Dutton agreed to plead no contest to fourth-degree assault and, additionally, to plead guilty or no contest to at least one federal felony.

Dutton's change-of-plea hearing in superior court was postponed twice, a delay of almost one month, until the parties made sure that Dutton had entered his federal plea. When this was verified, the superior court accepted Dutton's plea to fourth-degree assault and imposed the agreed-upon sentence.

Things unraveled six months later, when Dutton withdrew his plea to the federal felony. The State announced that it considered Dutton to have breached the plea agreement, thus resuscitating the third-degree assault charge. Over Dutton's objection, Superior Court Judge Larry R. Weeks vacated Dut-

ton's fourth-degree assault conviction and allowed the State to reinstate the third-degree assault charge.

Judge Weeks found that Dutton's agreement with the State required Dutton not just to plead guilty in federal court but also to be sentenced on that plea. Accordingly, Judge Weeks ruled that when Dutton withdrew his federal plea, he violated the terms of his plea agreement with the State. Judge Weeks then ruled that, because Dutton had breached the agreement, the plea agreement should be rescinded and the parties returned to the *status quo ante:* Dutton's misdemeanor assault conviction should be vacated, and the State should be allowed to reinstate the original felony assault charge.

Following this ruling, Dutton was tried for third-degree assault and was convicted. He now appeals the superior court's decision to allow the State to prosecute the third-degree assault charge.

### The standards of review

■■ Plea agreements are, in essence, contracts between a defendant and the government.[1] If a dispute arises concerning the terms of the agreement, the trial court must make findings regarding the existence and meaning of those terms. If one party alleges that the other party has violated the agreement, the trial court must likewise make findings regarding the asserted breach. If a breach is found, the court must then decide whether the breach was material. And if the breach was material, the court must fashion a remedy.

■■ On appeal, a trial court's findings of historical fact—its findings regarding the terms of the agreement and whether those terms were violated—will be upheld unless those findings are shown to be clearly erroneous.[2] But the question of whether a breach is "material"—that is, whether the breach destroys the basic value of the agree-

ment and excuses the non-offending party from further adherence to the terms of the agreement—is ultimately a question of law. Thus, an appellate court decides this issue *de novo.*[3]

### Did Dutton's plea agreement require him to persist in his federal plea through sentencing?

Dutton contends that, even though he withdrew his federal plea after he was sentenced in state court, he nevertheless lived up to the terms of the plea agreement. He argues that the plea agreement merely required him to enter the federal plea and did not require him to be sentenced in federal court. According to Dutton, once he entered his federal plea, he satisfied his part of the bargain and he was then at liberty to do anything he might to avoid being sentenced in federal court.

■■ As explained above, it was Judge Weeks's duty to resolve this dispute concerning the terms of Dutton's plea agreement. The law allows a trier of fact to infer the existence and terms of a contract "based on the reasonable meaning of a party's words and acts".[4] When a conflict arises regarding the terms of a contract, the trier of fact examines the parties' manifestations of purpose and assent. Because a contract is assessed under an objective standard, if a party objectively manifested an intention to be bound by the terms of a contract, that assent can not be defeated by evidence of the party's unexpressed reservations or subjective contrary intentions.[5]

■■ Dutton points out that he never expressly promised that he would not withdraw his federal plea. He also points out that the state prosecutor was willing to allow the change-of-plea to go forward in state court even though Dutton had not yet been sentenced in federal court. From this, Dutton argues that Judge Weeks should have con-

1. See *Closson v. State,* 812 P.2d 966, 970 (Alaska 1991).

2. See *id.*

3. See *id.* at 974.

4. *Howarth v. First National Bank of Anchorage,* 596 P.2d 1164, 1167 (Alaska 1979); *see also Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1281 (Alaska 1985).

5. See *Howarth,* 596 P.2d at 1167 n. 8.

cluded that it was immaterial to the plea agreement whether Dutton was ever sentenced in federal court.

The record as a whole, however, tends to refute Dutton's argument. As we explain below, the words and actions of the parties provide ample basis for Judge Weeks's conclusion that Dutton's plea agreement was premised, not just on Dutton's entry of a plea in federal court, but on Dutton's conviction and sentencing in federal court.

As already noted, Dutton's change-of-plea hearing was postponed until the parties ascertained that Dutton had indeed entered his plea in federal court. In addition, the prosecutor told Judge Weeks that the State's primary motivation for reducing the charge from third-degree assault to fourth-degree assault was that "[Dutton] has been convicted of a federal felony". Dutton's attorney agreed; the defense attorney told Judge Weeks that "the State only agreed to reduce [the charge against Dutton] contingent upon [his] entering a plea in federal court".

A few moments later, when discussing the fairness of the proposed misdemeanor sentence (4 months to serve), the defense attorney assured Judge Weeks that the important goals of sentencing were going to be satisfied by Dutton's anticipated federal sentence:

> I think that [Your Honor] can have some confidence in the federal court and the fact ... that Mr. Dutton's rehabilitation and deterrence is going to be satisfied to a greater extent by what's going to happen in federal court than it could be [in state court] under misdemeanor probation.

From this, Judge Weeks could justifiably conclude that the State's plea agreement with Dutton contemplated that Dutton would be convicted and sentenced in federal court.

In addition to this inference that Judge Weeks drew from objective manifestations of the parties, we note that Dutton's interpretation of the plea agreement simply does not make sense. Dutton fails to suggest what benefit the State might gain from Dutton's entry of a federal plea unless Dutton was

actually convicted and sentenced in federal court. That is, there appears to be no reason why the State would agree to reduce its charge against Dutton in exchange for Dutton's entry of a guilty plea in the federal case if the State believed that Dutton was then free to withdraw the federal plea.

Given this record, Judge Weeks had ample evidentiary justification for concluding that Dutton's plea agreement required Dutton not just to enter a plea in federal court but also to persist in that plea, so that he was convicted and sentenced in federal court. The judge's interpretation of the terms of the contract is not clearly erroneous.

(In his brief to this court, Dutton raises the possibility that, because of circumstances beyond Dutton's control, his federal plea might not have resulted in a conviction and sentence. Dutton suggests, for example, that he would not have violated his plea agreement if the U.S. Attorney's Office had decided to reject Dutton's plea and instead go to trial on all of the outstanding federal charges. There may be some merit to Dutton's argument, but it is entirely hypothetical. It was Dutton's choice to withdraw his federal plea.)

*Was Dutton's breach of the plea agreement a material breach?*

■ Judge Weeks concluded that Dutton's breach of the plea agreement (his withdrawal of his federal plea) was a "material" breach—that is, a serious enough breach to warrant rescinding the plea bargain and allowing the State to reinstate the original charge. The question of whether a breach is material must be answered by examining the reasonable expectations of the parties and then assessing to what extent the breach defeated these expectations.[6]

■ Dutton was charged with aiming a .44 magnum handgun at another man and threatening to kill him. This conduct falls within the core of third-degree assault as defined in AS 11.41.220(a)(1)(A). At the change-of-plea hearing, the prosecutor ex-

**6.** *See Closson v. State,* 784 P.2d 661, 665 (Alaska App.1989), *rev'd on other grounds,* 812 P.2d 966 (Alaska 1991).

plained that the State viewed Dutton's conduct as serious and that the State had agreed to reduce the charge to a misdemeanor (fourth-degree assault) only because Dutton had pleaded guilty to a federal felony.

The record shows that both parties contemplated that Dutton's federal sentence would be more important than his state sentence. The plea agreement called for Dutton to serve 4 months in jail for the misdemeanor assault. Because Dutton had been in custody for several months by the time he changed his plea, Dutton's 4-month sentence amounted to time served. When Dutton's attorney spoke to the court about this proposed sentence, the defense attorney assured Judge Weeks that Dutton's misdemeanor sentence was of small importance because the judge could rely on Dutton's federal sentence to satisfy the sentencing goals of deterrence and rehabilitation.

Given these circumstances, we agree with Judge Weeks that Dutton's withdrawal of his federal plea significantly defeated the State's expectations and was therefore a material breach of the plea agreement.

■ On appeal, Dutton argues that even if he breached the plea agreement by withdrawing his federal plea, this breach was not material because the State ultimately was not harmed. Dutton points out that, even though he withdrew his federal plea and went to trial, he was subsequently convicted of several federal offenses, for which he received a composite sentence of 12 months' imprisonment.

There are two problems with Dutton's argument; the first one is procedural and the second one is substantive.

First, Dutton did not receive his federal sentence until September 4, 1997. This was approximately four months after Judge Weeks made his decision concerning Dutton's breach of his plea agreement with the State. In fact, Dutton had already been tried, convicted, and sentenced in the superior court for third-degree assault before he was sentenced in federal court. Dutton's state sentence was entered on August 15, 1997—three weeks before his federal sentencing.

Under these circumstances, if Dutton believed that his federal sentence mitigated his breach of the plea agreement, it was his duty to present this argument to Judge Weeks and to ask Judge Weeks to reconsider his earlier decision to rescind the plea agreement. Dutton can not litigate this issue for the first time on appeal.

Second, even though Dutton was eventually tried and convicted in federal court, this does not necessarily mean that he committed no material breach of his plea agreement with the State. For instance, in *United States v. González–Sánchez*[7], the government agreed to dismiss some of the charges against one defendant, Carlos Latorre, in exchange for Latorre's promise to cooperate fully and honestly in the prosecutions of his co-defendants. However, when Latorre later took the stand as a government witness, his testimony differed materially from his earlier statements to the federal investigators. The government thereupon rescinded the plea agreement and reinstated the original charges against Latorre.

On appeal, Latorre argued that even if he failed to cooperate fully and honestly, the government suffered no injury because the government ultimately obtained the conviction of Latorre's co-defendant. The federal court of appeals rejected this argument:

> [Latorre's] argument misinterprets his obligation under the plea agreement. The government's promise was not conditioned upon ... conviction of ... any other defendant; it was conditioned upon Latorre's cooperation in the government's investigation and prosecutions. Latorre failed to cooperate with the government. He can not expect to receive the benefits of his plea agreement simply because the government was successful in its prosecution of [the co-defendants] despite Latorre's surprise testimony. The district court's findings that Latorre failed to cooperate fully and honestly and that this failure constituted a material breach of the plea agreement are not clearly erroneous.

*González–Sánchez*, 825 F.2d at 579.

Similarly, in Dutton's case, the federal government ultimately succeeded in convicting

7.   825 F.2d 572 (1st Cir.1987).

Dutton of felony charges despite his refusal to enter a plea, but this fact does not excuse Dutton's breach of the plea agreement, nor does it render his breach of the agreement any less material.

> *Could Judge Weeks rescind the plea agreement after Dutton had already been convicted of misdemeanor assault (based on his plea) and had served his sentence?*

■ Dutton argues that even if he materially breached his plea agreement with the State, the double jeopardy clauses of the federal and state constitutions forbade Judge Weeks from rescinding the plea agreement, vacating Dutton's misdemeanor conviction, and allowing the State to reinstate the third-degree assault charge.

Dutton points out that, when he withdrew his federal plea, his state court conviction for fourth-degree assault was already final. (Indeed, as just explained, Dutton had already served his sentence because he was sentenced to time served.) Dutton also points out that fourth-degree assault is a lesser offense included within the original charge of third-degree assault. From this, Dutton concludes that his conviction and sentence for fourth-degree assault preclude any later prosecution for third-degree assault arising out of the same incident, even if he did violate the terms of his plea agreement.

It is true, as a general rule, that the double jeopardy clause forbids a state from prosecuting a defendant after the defendant has already been convicted and punished once for the same offense. This same rule applies when the second prosecution is for a greater offense after the defendant has been convicted of a lesser included charge arising from the same incident.[8] However, the rule is different when the defendant has secured the lesser charge as part of a plea bargain. In *Ricketts v. Adamson*[9], the United States Supreme Court held that the federal double jeopardy clause is not violated when, follow-

ing a defendant's breach of a plea agreement, the government reinstitutes a greater charge that was reduced as part of a plea agreement—even after the defendant has changed their plea and been convicted of the reduced charge.

The defendant in *Adamson* was charged with first-degree murder in connection with the bombing death of a news reporter. Adamson was allowed to plead guilty to a lesser included offense (second-degree murder) in exchange for his promise to testify against two other participants in the conspiracy. He did so. Adamson was then sentenced for second-degree murder and began serving his sentence. However, the convictions of the two other conspirators were reversed on appeal, and the government again called upon Adamson to testify against them. This time, Adamson refused. The government responded by rescinding the plea agreement and charging Adamson with first-degree murder. Adamson was tried and convicted.

Having exhausted his state appeals, Adamson ultimately sought a federal writ of habeas corpus. He argued that the double jeopardy clause prohibited the state from prosecuting him a second time for his role in the murder, and he also argued that, even though he had agreed to the plea bargain, no one had ever explicitly asked him to waive his double jeopardy rights.[10] The Supreme Court rejected this contention:

> We ... assume that jeopardy attached at least when [Adamson] was sentenced ... on his plea of guilty to second-degree murder. Assuming also that[,] under Arizona law[,] second-degree murder is a lesser included offense of first-degree murder, the Double Jeopardy Clause, absent special circumstances, would have precluded [Adamson's] prosecution ... for the greater charge on which he now stands convicted. *Brown v. Ohio* [citation omitted]. The State submits, however, that [Adamson's] breach of the plea [agreement] ... removed the double jeopardy bar to prose-

**8.** *See Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977).

**9.** 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

**10.** *See id.*, 483 U.S. at 7–8, 107 S.Ct. at 2684.

cution of [Adamson] on the first-degree murder charge. We agree with the State. *Adamson*, 483 U.S. at 8, 107 S.Ct. at 2685 (footnotes omitted).

Dutton acknowledges that *Adamson* appears to remove any potential double jeopardy objection based either on the apparent finality of Dutton's fourth-degree assault conviction and sentence or on the fact that fourth-degree assault is a lesser included offense of the original charge, third-degree assault. Dutton argues, however, that *Adamson* allows such a result only when the plea agreement expressly provides that the defendant's breach will result in reinstatement of the original charges.

The plea agreement in *Adamson* specifically provided that if Adamson failed to abide by the terms of the agreement, the original first-degree murder charge would be automatically reinstated and the parties would be returned to the positions they occupied before the agreement.[11] Although the *Adamson* plea agreement did not explicitly mention the double jeopardy clause or explicitly declare that Adamson would waive his double jeopardy rights if he violated the agreement, the Supreme Court deemed the above-referenced provisions to be the functional equivalent of an explicit waiver of Adamson's double jeopardy rights in the event he breached the agreement.[12]

Dutton interprets *Adamson* as standing for the rule that, if the government allows a defendant to plead guilty to reduced charges, and if the government wishes to be able to reinstate the original charges if the defendant breaches the plea agreement, then the agreement itself must explicitly declare that one of the consequences of a breach is reinstatement of the original charges. Dutton relies on cases holding that waivers of double jeopardy rights must be intentional.[13] He argues that if *Adamson* were interpreted to allow the State to reinstate the original

charges even when the plea agreement is silent on this point, this would, in effect, lend judicial recognition to unintended forfeitures of the constitutional guarantee against double jeopardy.

Dutton is correct that double jeopardy rights can not be forfeited unintentionally. Nevertheless, criminal defendants may relinquish their double jeopardy rights by their conduct (or by the conduct of their attorneys) even though no judicial officer ever explains the double jeopardy consequences of this conduct to the defendant beforehand.

This principle was addressed by the United States Supreme Court in *United States v. Scott*.[14] The defendant in *Scott* was charged with three counts of distributing narcotics. In the middle of his jury trial, Scott asked the trial judge to dismiss two of the counts because of prejudicial pre-indictment delay; the trial judge granted Scott's motion. The government sought to appeal this dismissal, but the federal appeals court ruled that the government's appeal was barred by the double jeopardy clause—because the trial judge's ruling had been issued in the middle of trial, after jeopardy had attached.

The Supreme Court reversed the federal appeals court and allowed the government to appeal the dismissal of the two counts. The Court held that the double jeopardy clause did not preclude the government's appeal because Scott had elected to seek termination of his trial on the two counts, and because Scott sought this termination "on grounds unrelated to guilt or innocence".[15] Because Scott chose to seek termination of the already-commenced jury trial on grounds that did not constitute a factual acquittal, Scott suffered "no injury cognizable under the Double Jeopardy Clause" when the government appealed the trial judge's dismissal of the two counts.[16]

The Supreme Court declared that its decision was not based on any finding that Scott

---

11. *See id.*, 483 U.S. at 9, 107 S.Ct. at 2685.

12. *See id.*, 483 U.S. at 9–10, 107 S.Ct. at 2685–86.

13. *See generally Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975).

14. 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).

15. *Scott*, 437 U.S. at 96, 98 S.Ct. at 2196.

16. *Id.*, 437 U.S. at 99, 98 S.Ct. at 2198.

had "waived" his protection against double jeopardy—in the sense of formally and voluntarily relinquishing a known right.[17] Rather, the Supreme Court held, no such formal waiver was required, for "the Double Jeopardy Clause ... does not relieve a defendant from the consequences of his voluntary choice." [18]

A decade later, in *United States v. Broce* [19], the Supreme Court elaborated on this theme, holding that a potential double jeopardy defense was waived by a defendant's guilty plea even though the defendant had not focused on the possibility of a double jeopardy defense when he pleaded guilty. The Court stated that the defendant's "[r]elinquishment [of the potential double jeopardy defense] derives not from any inquiry into [the] defendant's subjective understanding of the range of potential defenses, but from the admissions [he] necessarily made upon entry of a voluntary plea of guilty." [20]

Thus, defendants relinquish their protection against being tried twice for the same crime when they file an appeal [21], yet there is no requirement that a notice of appeal be accompanied by the defendant's affidavit acknowledging this waiver. Similarly, a defense motion for mistrial constitutes a waiver of the defendant's double jeopardy objection to a second trial [22], yet our law does not require the trial judge to address the defendant personally and secure an explicit waiver of double jeopardy rights before granting the mistrial motion. In both cases, the relinquishment or "waiver" of double jeopardy rights is simply a legal consequence of the defendant's action.

Courts have applied this same rationale to a defendant's breach of a plea agreement. Even though a plea agreement may not explicitly list reinstatement of the original charges as one of the consequences of a material breach, courts nevertheless conclude that the government can normally seek rescission—a return to the *status quo ante*—if the defendant commits a material breach.

For example, in *People ex rel. VanMeveren v. District Court* [23], the plea agreement called for a specified sentence. After the defendant entered his plea and the agreed-upon sentence was imposed, the defendant filed a motion for reduction of the sentence under a Colorado court rule similar to former Alaska Criminal Rule 35(a).[24] The Colorado Supreme Court held that, because the plea agreement did not expressly forbid the defendant from filing a motion to reduce his sentence, the defendant had the right to file the motion and the sentencing court had the authority to grant it. The Colorado court also held, however, that if the sentencing court granted the motion and reduced the defendant's sentence below the agreed-upon sentence, the government then had a right to rescind the plea agreement.[25]

The Michigan Court of Appeals reached a similar result in *People v. Siebert.* [26] The two defendants in *Siebert* were initially charged with several drug and gambling offenses, the most serious of which was delivery of over 650 grams of cocaine—a crime that carries a penalty of life imprisonment without parole in Michigan.[27] The defendants agreed to plead guilty to a lesser offense (delivery of between 225 and 650 grams of cocaine) and to accept a sentence of 20 to 30 years' impris-

**17.** See *Green v. United States*, 355 U.S. 184, 191, 78 S.Ct. 221, 226, 2 L.Ed.2d 199 (1957).

**18.** *Scott*, 437 U.S. at 99, 98 S.Ct. at 2198.

**19.** 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

**20.** *Id.*, 488 U.S. at 573–74, 109 S.Ct. at 764.

**21.** See *United States v. Ball*, 163 U.S. 662, 671–72, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

**22.** See *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971).

**23.** 195 Colo. 34, 575 P.2d 4 (Colo.1978).

**24.** Former Criminal Rule 35(a) authorized trial courts to "reduce a sentence within 120 days of the day it [was] imposed". This reduction could be based simply on the court's desire to reconsider and show mercy. See *Thomas v. State*, 566 P.2d 630, 639 n. 34 (Alaska 1977); *State v. Tinsley*, 928 P.2d 1220, 1223 (Alaska App.1996).

**25.** See *People v. District Court*, 575 P.2d at 7.

**26.** 201 Mich.App. 402, 507 N.W.2d 211 (Mich. App.1993).

**27.** See *id.* at 214.

onment; in exchange, the government dismissed the other charges.[28]

At the sentencing hearing, however, the judge declared that the negotiated sentences were inappropriately severe. He sentenced one defendant to 5 to 30 years, the other defendant to 3 to 30 years.[29] As a result, the prosecutor asked the court's permission to withdraw from the plea agreements. When the trial court refused to allow this, the government appealed.

The defendants argued that if the government was allowed to reinstate the original charge after the defendants had already been sentenced for a lesser included offense, this would violate the double jeopardy clause.[30] The Michigan Court of Appeals rejected this argument:

> In the instant case, the [trial] court's action in accepting pleas of guilty [to] delivery of between 225 and 650 grams of cocaine, without honoring the conditions placed on the charge reduction by the [government], was violative of [the principle that a trial judge can not, over the prosecutor's objection, accept a defendant's plea to a lesser included offense and dismiss the charged greater offense].... [The] defendants in this case have not been tried for the greater offense [*i.e.,* delivery of 650 grams or more], and a plea conviction on a lesser charge before trial ... is not considered an acquittal of the greater charge. [Citations omitted] ... [T]he trial court made no factual determination that one or more elements of the greater offense could not be established. Therefore, the Double Jeopardy Clause does not bar proceedings on the greater charge [when] the [defendant's] convictions and sentences for the lesser charge [are vacated].

*Siebert,* 507 N.W.2d at 223 (footnotes omitted).

The defendants contended that this result would violate the Supreme Court's decision in *Adamson.* They argued that, under *Adamson,* reinstatement of the original charges is constitutionally permissible only if the plea agreement explicitly reserves this right to the government—that is, only if one or more clauses of the agreement explicitly required the defendants to waive their double jeopardy rights. The Michigan Court of Appeals answered:

> We reject [the] defendants' argument that[,] because the plea agreements do not expressly state that the prosecutor has [the] right to withdraw from the agreements and reinstate the original charges in the event the agreement is not honored, the prosecutor has no such right and the Double Jeopardy Clause would be violated by reinstatement of the original charges. In *Ricketts v. Adamson,* [citation omitted], relied on by [the] defendants, ... [t]he [plea] agreement stated that if the defendant breached the agreement, the original charge would be reinstated. ... While the Supreme Court concluded that the defendant, according to the terms of the agreement, waived any double jeopardy rights, [the Court] did not hold that the Double Jeopardy Clause would have been violated had the agreement not provided for reinstatement of the charges.

*Siebert,* 507 N.W.2d at 223–24.

Courts have reached analogous decisions in cases where a defendant, having negotiated a plea agreement, later challenges not just the sentence but the entire underlying plea. The Virginia Court of Appeals faced such a case in *Peterson v. Commonwealth.*[31] The defendant in *Peterson* was initially charged with a felony, possession of marijuana with intent to distribute. In exchange for dismissal of this felony, Peterson agreed to plead guilty to a misdemeanor, simple possession of marijuana, and to receive a sentence of 12 months in jail.

Peterson entered this plea in district court and received the negotiated sentence.[32] Ten days later, however, Peterson appealed her conviction to the circuit court. By doing this,

28. *See id.*

29. *See id.*

30. *See id.* at 220.

31. 5 Va.App. 389, 363 S.E.2d 440 (Va.App.1987).

32. *See id.* at 443.

Peterson vacated not only her jail sentence but also her entire conviction—for under Virginia law, a defendant who appeals a district court conviction to the circuit court is entitled to a trial *de novo*.[33] In response to Peterson's appeal, the prosecutor reinstated the original felony charge. Peterson was tried and convicted of this felony.

On appeal, Peterson argued that the government's reinstatement of the felony charge (possession of marijuana with intent to distribute) violated the double jeopardy clause. Relying on *Brown v. Ohio*[34], Peterson asserted that she could not be convicted of felony possession because she had already been convicted of a lesser included offense arising out of the same transaction. The Virginia court rejected this argument:

> [S]everal federal and state courts [have addressed the analogous question of] whether retrying a defendant who has successfully appealed his plea-based conviction [on a lesser charge] violates double jeopardy. Those courts ... have consistently answered this inquiry in the negative. [Citations omitted] These courts reason that retrial on the original charges after a guilty plea [on a lesser included charge] has been reversed and vacated on appeal does not constitute double jeopardy; rather, [the] jeopardy of the first trial continues through the appeal and into the subsequent retrial.

*Peterson*, 363 S.E.2d at 446.

Similarly, in *Village of Chagrin Falls v. Katelanos*[35], the defendant was initially charged with driving while intoxicated but, at his arraignment, he agreed to plead no contest to a reduced charge ("driving with an excessive alcohol content") in exchange for the government's dismissal of the DWI charge. The defendant was convicted on his plea and sentenced, but he later filed an appeal challenging the validity of his plea. The Ohio Court of Appeals concluded that Katelanos's plea should be vacated because the arraigning judge had failed to adequately explain the consequences of the plea. Having reached this conclusion, the court then held that the government was free to reinstate the original charge against Katelanos—even though the plea agreement made no mention of what should happen if Katelanos later challenged his plea:

> Since the improper conviction resulted from a defective plea, the defendant has not performed his part of the ... plea bargain. Hence, we must vacate the [trial] court's action and reinstate all the original charges.

*Katelanos*, 561 N.E.2d at 994.

Applying the foregoing double jeopardy holdings to Dutton's case, we conclude that the double jeopardy clause did not bar reinstatement of the original third-degree assault charge after Dutton withdrew his plea to the federal charge. Judge Weeks found that Dutton's plea agreement with the State hinged on the fact that Dutton would be convicted and sentenced on at least one federal felony—that this fact was crucial to the State's willingness to dismiss the third-degree assault charge and allow Dutton to plead to the reduced charge of fourth-degree assault. When, following his sentencing in state court, Dutton withdrew his federal plea, he put himself in a legal position analogous to the defendants in *District Court, Siebert, Peterson,* and *Katelanos*. That is, Dutton received the anticipated benefit of his bargain with the State, and then he voluntarily took action that defeated the State's expected benefit. Even though Dutton's plea agreement with the State did not contain an explicit provision outlining the State's remedies if Dutton withdrew his federal plea, we nevertheless conclude that the State was entitled to rescission of the plea agreement—return of the parties to the *status quo ante,* and reinstatement of the original charge.

### Dutton's attack on one of the trial court's evidentiary rulings.

Aside from his arguments concerning his plea agreement and the double jeopardy clause, Dutton also argues that his conviction

---

**33.** *See id.*

**34.** 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**35.** 54 Ohio App.3d 157, 561 N.E.2d 992 (Ohio App.1988).

should be reversed because the superior court allowed the State to introduce certain evidence at his trial—photographs of firearms, 24,000 rounds of live ammunition, and thirty-eight knives that the authorities seized from Dutton's campsite at Glacier Bay. Dutton claims that this evidence was unfairly prejudicial and should have been excluded under Alaska Evidence Rules 403 and 404(b).

Judge Weeks allowed the State to introduce this evidence because he concluded that Dutton's possession of this arsenal was relevant to demonstrate Dutton's state of mind at the time he accosted the victim, Foley, and aimed the .44 magnum handgun at him. This evidence, Judge Weeks ruled, tended to support the State's allegation that Dutton had acted recklessly when he placed Foley in fear of imminent serious physical injury—a culpable mental state that was a necessary element of third-degree assault.

In *Lerchenstein v. State* [36], this court upheld the admission of evidence that the de-

fendant had acted in an angry, aggressive, and combative manner during the hour preceding a confrontation that resulted in a series of third-degree assaults and one homicide. We concluded that this evidence was relevant to the issue of whether the defendant had acted reasonably. For the same reason, we conclude that Judge Weeks did not abuse his discretion when he allowed the State to introduce the evidence of Dutton's stockpile of arms and ammunition.

*Conclusion*

The judgement of the superior court is AFFIRMED.

**36.** 697 P.2d 312, 317–18 (Alaska App.1985),    *aff'd,* 726 P.2d 546 (Alaska 1986).