NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts.*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA


| | | |
|---|---|---|
| JERRY LEWIS ANTHONY, | ) | |
| | ) | Court of Appeals No. A-11159 |
| Appellant, | ) | Trial Court No. 3AN-10-5939 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Appellee. | ) | No. 2418 — June 27, 2014 |
| | ) | |

Appeal from the Superior Court, Third Judicial District, Anchorage, William F. Morse and Alex Swiderski, Judges.

Appearances: Hanley Robinson, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Smith, Superior Court Judge.[*]

Judge ALLARD.

---

[*]    Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

Jerry Lewis Anthony pleaded guilty to felony driving under the influence in exchange for a reduced sentence and admission into the State's Felony DUI Wellness Court, an alternative therapeutic sentencing court. Under Anthony's plea agreement, the superior court was required to discharge Anthony from the State Wellness Court program (thus subjecting him to a significantly harsher sentence) "upon a judicial finding of probable cause that [he] drove a motor vehicle."

Anthony was subsequently discharged from the program for riding a bicycle with an after-market detachable motor. On appeal, Anthony argues that the term "motor vehicle" as used in the plea agreement is ambiguous and that he reasonably understood the term to exclude a bicycle with an after-market motor, in part because participants in the Anchorage Municipal Wellness Court had been allowed to use such bicycles.

We conclude a remand is needed to determine the objective reasonableness of Anthony's interpretation of the plea agreement given the reasonable expectations of the parties. We therefore remand this case to the superior court for further proceedings consistent with this opinion.

*Factual background*

In June 2010, Anthony was charged with felony driving under the influence.[1] Several months later, he pleaded guilty to that charge in exchange for admission into the State's Felony DUI Wellness Court. Under the terms of the plea agreement, if Anthony successfully completed the Wellness Court program, his sentence

---

[1] AS 28.35.030(n).

and fine would be suspended.  If he did not complete the program, the court would order him to pay a $10,000 fine and would impose a 5-year sentence with 2 years suspended.

Under the general terms of the plea agreement, the superior court had the discretion to sanction or potentially terminate Anthony from the program if he violated any of the terms of his agreement.  In most circumstances, the treatment team would meet to discuss the violation and make a recommendation to the court with regards to the appropriate sanction.

However, the plea agreement also specified four circumstances under which the superior court had no discretion and was required to discharge Anthony from the program without input from the treatment team.  One of these circumstances was "upon a judicial finding of probable cause that [Anthony] drove a motor vehicle."  The term "motor vehicle" was not defined in the plea agreement.

In August 2011, a Wellness Court probation officer saw Anthony riding down a city avenue on a motorized bicycle.  The State filed a motion to discharge Anthony from the Wellness Court program, asserting that this activity constituted "driving a motor vehicle" in violation of the plea agreement.  The State then requested a judicial finding of probable cause that Anthony drove a motor vehicle, and mandatory discharge of Anthony from the program.

Anthony opposed the State's motion.  Anthony admitted that he had been riding a bicycle with an after-market motor and that the motor had been running, but he argued that the modified bicycle did not qualify as a "motor vehicle" under the plea agreement.

The superior court held an evidentiary hearing on the State's motion.  At the hearing, Allen Mingori, an auto mechanic and Wellness Court participant, testified that he had seen Anthony's bicycle and that it was a mountain bike with an after-market

gas-powered engine attached to it. He testified that the engine size was 49 cc, and that an engine of that size could power a bicycle to a speed of up to 32 to 35 miles per hour. Mingori explained that the engine had to be started by pedaling, but that it was not necessary to pedal to keep the engine running.

Tiffany Thomas, an employee of the Division of Motor Vehicles, testified that, as a general matter, an M-2 motorcycle license is needed for any "motorized bicycle" with an engine under 50 cc.[2] However, Thomas also testified that a bicycle with an after-market motor that is used only to assist the rider's pedaling is not required to be registered, if the motor is removable.

Duke Circle, a case manager with the Municipal Wellness Court, testified on Anthony's behalf. Circle explained that David Dunham, a Municipal Wellness Court participant, had sought his permission to use a bicycle with an after-market engine. Circle spoke to a city prosecutor who told Circle that Dunham would be allowed to drive the bicycle with the after-market motor and would not need a driver's license because the bicycle "was more like a Segway or a motorized skateboard." Circle confirmed this position with the Anchorage Police Department and then gave Dunham permission to use the bicycle, provided Dunham did not drive in excess of 25 miles per hour. Dunham later sold Anthony (and apparently other Wellness Court participants) after-market motor kits for their bicycles.

On cross-examination, Circle acknowledged that Anthony was a participant in the State Wellness Court, not the Municipal Wellness Court, and that the two courts were different. (The State court involves offenders who have been convicted of felony DUIs, while the Municipal court involves offenders who have been convicted of

---

[2]    *See* AS 28.90.990(18); 2 AAC 90.210(b)(2)(C).

misdemeanor DUIs.)  Circle also acknowledged that he had never personally spoken to Anthony about motorized bicycles and had never given Anthony permission to use one.

Anthony then testified that he had received his after-market bicycle motor kit from Dunham, who told him that bicycles with after-market motors were not prohibited in Wellness Court.  Anthony explained that the motor was attached to his bicycle with four locking pins; once the pins were removed, the motor would fall off and the bicycle would revert back to an exclusively human-powered bicycle.  Anthony admitted that the motor was running when the probation officer saw him.  He also admitted that, once the engine was started, it was possible for the motor to function without the use of the pedals.

After hearing this testimony, Superior Court Judge William A. Morse ruled on the State's motion.  The court noted that the term "motor vehicle" was not defined in the plea agreement, but concluded that the definition in Title 28, the motor vehicle code, was a "good starting point."  Alaska Statute 28.90.990(a)(16) defines a motor vehicle as "a vehicle that is self-propelled, except a vehicle moved by human or animal power."

The court also concluded, however, that it did not need to actually resolve whether Anthony's modified bicycle qualified as a "motor vehicle" under this definition, because it only needed to determine whether there was "probable cause" to find that it might qualify:

> I think that you can have probable cause even if it turns out that the thing wasn't a motor vehicle. So, for example, if you had a definition of motor vehicle that said "an engine 50 or more cc's," and the police officer [said] "it sure looked like a 50-cc engine to me," and it turned out that it was [only] 49 cc's, I think that the way that the [plea] agreement is written allows [Anthony's termination from the Wellness Court if]

you ... have probable cause to believe that the engine [was] over 50 cc's even though, as it turns out, it's only 49.

Based on this reasoning, the court found that because reasonable people could believe that Anthony's modified bicycle fit within the statutory definition of "motor vehicle," there was "probable cause" to believe that Anthony had driven a motor vehicle in violation of the plea agreement and his discharge from the program was therefore mandatory.

*Why we vacate the superior court's decision and remand the case for further proceedings*

Under the terms of Anthony's Wellness Court plea agreement, the superior court was required to discharge Anthony from the program upon a "judicial finding of probable cause that [Anthony] drove a motor vehicle." As we just explained, the superior court interpreted this language to mean that Anthony had to be terminated from the program if the State showed that there was "probable cause" (*i.e.*, good reason to believe) that Anthony's modified bicycle qualified as "a motor vehicle" — even if this turned out not to be true.

As an initial matter, we note that we have serious concerns about the superior court's interpretation of the "probable cause" clause of the plea agreement given the constitutional liberty interests at stake. Under this reading of the plea agreement, the court would be required to discharge a participant from the Wellness Court program if there was "probable cause" to believe that a violation of the plea agreement had occurred, even if the participant could later prove, as a factual matter, that there was no violation.

Thus, under the superior court's interpretation, if the State had petitioned the court to discharge Anthony based on a probation officer's report that he saw Anthony driving an automobile, the court would have to terminate Anthony from the program (and greatly increase his sentence), even if the court later found that the car was actually being driven by someone else who bore a striking physical resemblance to Anthony, but was *not* Anthony. All that would matter was if the probation officer *reasonably believed* (however mistakenly) that Anthony was the person driving the car. While it is perhaps conceivable that Anthony and the State both reasonably understood and intended the plea agreement to call for such a result, this seems unlikely — particularly in light of the due process concerns such an interpretation would create.

But there is also a second, more immediate, problem with the superior court's "probable cause" analysis in this case. Here, there was no suggestion that the probation officer reasonably (albeit mistakenly) misperceived the facts of the situation. Indeed, there was no *factual* dispute at all — Anthony readily admitted driving his bicycle with the after-market motor running, and he did not particularly contest the State's description of the after-market motor and its capabilities. Instead, the dispute centered on a question of law: what did the term "motor vehicle" mean in the context of the plea agreement, and did Anthony's modified bicycle fit (or not fit) within that definition?

This type of legal determination is not susceptible to a "probable cause" analysis. It was not enough for the court to conclude that *some* people might reasonably (even if mistakenly) believe that the legal definition of "motor vehicle" was broad enough to encompass the modified bicycle that Anthony used. Rather, the court needed to address the parties' differing interpretations of the term and to directly decide whether

Anthony's bicycle constituted a "motor vehicle" under the correct legal interpretation of that term.

Answering this question is not a simple matter of deciding whether Anthony's modified bicycle falls within the statutory definition of "motor vehicle" found in AS 28.90.990(a)(16). Anthony was not charged with violating a provision of the motor vehicle code; he was charged with violating the terms of his plea agreement. Because of this, the superior court's task of interpreting the phrase "motor vehicle" is governed by the principles of contract interpretation, not statutory construction.[3]

Under the principles of contract interpretation, when a dispute arises about the meaning of an undefined term in a contract, the court must look to the reasonable expectations of the parties at the time they entered the agreement: "When a provision of a contract is ambiguous and reasonably susceptible of two differing interpretations, a court will normally seek testimony concerning the parties' understanding of the provision at the time the contract was made, and will examine both case law interpreting similar language and relevant extrinsic evidence concerning the interpretation of the disputed language within the relevant community of contracting parties."[4] If, after engaging in this analysis, the meaning of the term still remains ambiguous — that is, if the parties' differing interpretations are both objectively reasonable, given all the available evidence regarding the circumstances and purposes of the agreement — the court must normally determine which party's interpretation is the more reasonable under the circumstances.[5]

---

[3]  *See Simon v. State*, 121 P.3d 815, 821 (Alaska App. 2005).

[4]  *Id.* at 821.

[5]  *See Norton v. Herron*, 677 P.2d 877, 880-82 (Alaska 1984).

But where the parties' bargaining power is unequal, as in criminal plea agreements, the analysis is different: If an undefined term in a plea agreement remains ambiguous — that is, if the State and the defendant each have differing but objectively reasonable interpretations of the term — the court is required to construe the ambiguity against the State, because the State is the party with the greater bargaining power.[6]

In the present case, the superior court made no findings on the genuineness or objective reasonableness of Anthony's proposed interpretation of the term "motor vehicle." Nor did the superior court attempt to ascertain what the reasonable expectations of the parties were with regard to that term. A remand is therefore needed for the superior court to address these issues.

---

[6] The rule that objective ambiguities in plea agreements are construed against the government is considered well-settled law in most jurisdictions. *See, e.g., United States v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir. 1988); *United States v. Ready*, 82 F.3d 551, 558–59 (2d Cir. 1996); *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986); *United States v. Sibley*, 448 F.3d 754, 759 (5th Cir. 2006); *Carnine v. United States*, 974 F.2d 924, 928–29 (7th Cir. 1992); *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003); *United States v. De la Fuente*, 8 F.3d 1333, 1337–38 n.7 & n.8 (9th Cir. 1993); *United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007); *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990); *Humphrey v. State*, 686 So.2d 560, 562 (Ala. Crim. App. 1996); *Keller v. People*, 29 P.3d 290, 297 (Colo. 2000); *State v. Adams*, 982 A.2d 187, 191 (Conn. App. 2009); *Stedman v. District of Columbia*, 12 A.3d 1156, 1158 (D.C. App. 2011); *State v. Cole*, 16 P.3d 945, 948 (Idaho App. 2000); *Valenzuela v. State*, 898 N.E.2d 480, 482–83 (Ind. App. 2008); *State v. Wills*, 765 P.2d 1114, 1120 (Kan. 1988); *Elmore v. Commonwealth*, 236 S.W.3d 623, 627–28 (Ky. App. 2007); *State v. Mares*, 888 P.2d 930, 933 (N.M. 1994); *State v. Bethel*, 854 N.E.2d 150, 167 (Ohio 2006); *Commonwealth v. Kroh*, 654 A.2d 1168, 1172 (Pa. Super. 1995); *State ex rel. Forbes v. Kaufman*, 404 S.E.2d 763, 768 (W. Va. 1991). *But see State v. Wesley*, 772 N.W.2d 232, 238 n.5 (Wis. App. 2009) (noting that Wisconsin has rejected the rule that ambiguities in a plea agreement must be construed against the government).

This issue was discussed at length in Judge Mannheimer's concurring opinion in *Andrew A. v. State*, 2011 WL 6347421, at *12 (Alaska App. Dec. 14, 2011)(unpublished).

Although we remand this case to the superior court for future findings, we note that the superior court was correct in treating Title 28's definition of "motor vehicle" as an appropriate starting point for its analysis. The parties entered into this plea agreement because Anthony committed a violation of Title 28 — namely, felony driving under the influence. Given this circumstance, and given the rehabilitative and deterrent purposes of the plea agreement, the superior court could reasonably treat the statutory definition found in Title 28 as relevant extrinsic evidence of what the parties likely intended the term "motor vehicle" to mean when they included it in the plea agreement.

But, as we have explained, Anthony's case is governed by the principles of contract interpretation, so the answer ultimately lies in the reasonable expectations of the parties. The superior court must use these principles when resolving any ambiguities as to whether Anthony's bicycle falls within the meaning of "motor vehicle" as that term is used in the plea agreement.

*Conclusion*

The decision of the superior court is VACATED and this case is REMANDED for further proceedings consistent with this opinion. We do not retain jurisdiction.