NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other*
*formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us.*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JENNIFER LYNN RIRIE,

                Appellant,

v.

MUNICIPALITY OF ANCHORAGE,

                Appellee.

Court of Appeals No. A-13039
Trial Court No. 3AN-15-01634 CR

O P I N I O N

No. 2677 — September 11, 2020

Appeal from the District Court, Third Judicial District, Anchorage, Gregory J. Motyka, Judge.

Appearances:  Megan M. Rowe, Denali Law Group, Anchorage, for the Appellant.  Sarah E. Stanley, Assistant Municipal Prosecutor, and Rebecca A. Windt Pearson, Municipal Attorney, Anchorage, for the Appellee.

Before:  Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

D.R., the ten-month-old son of Jennifer Lynn Ririe, was brought to the emergency room for injuries on the front and back of his head and his ear.  As a result, the Office of Children's Services (OCS) instituted a child-in-need-of-aid case for

Ririe's three children, and the Municipality of Anchorage instituted a criminal case against Ririe.

The Municipality and Ririe entered into a deferred sentencing agreement, under which Ririe would plead guilty to child neglect under Anchorage Municipal Code 08.10.040(B)(3) but would be allowed to withdraw her plea and have her criminal case dismissed if she complied with OCS's requirements and recommendations. Ririe's child-in-need-of-aid case was subsequently dismissed without opposition from OCS, but the Municipality nevertheless argued that Ririe had not complied with OCS requirements and recommendations and therefore could not withdraw her plea. The district court agreed with the Municipality and sentenced Ririe pursuant to the deferred sentencing agreement.

Ririe now appeals, arguing that the district court erred in finding that she was in violation of the deferred sentencing agreement. For the reasons explained here, we agree with Ririe. We accordingly vacate the court's order and remand this case to the district court for withdrawal of Ririe's plea and dismissal of Ririe's criminal case.

*Factual background*

In February 2015, D.R. was taken to the hospital with unexplained injuries. OCS took emergency custody of him and his two siblings and filed the child-in-need-of-aid action. The Municipality charged Ririe with child abuse under AMC 08.10.030(B).

In May 2015, OCS provided Ririe with a family case plan. The case plan laid out goals that she was required to meet, as well as the actions she needed to take to meet those goals. Among the stated goals was that Ririe "understand[] her role as

a protective caregiver to her children and [be] aligned with them," as well as have "the knowledge and skills to fulfill her caregiving responsibility." OCS would support these goals by referring Ririe to a "parenting assessment," providing collateral information for the assessment, and helping her identify appropriate services to address any recommendations that came out of it. Ririe was directed to complete the parenting assessment and follow the recommendations.

### The deferred sentencing agreement

In February 2016, Ririe and the Municipality entered into a deferred sentencing agreement. Under the agreement, Ririe pleaded guilty to child neglect under AMC 08.10.040(B)(3), and sentencing was deferred for nine months. If Ririe followed the terms of the agreement, then Ririe could withdraw her plea, and the Municipality would dismiss her case. If she failed to abide by the conditions, she would receive a sentence of 180 days with 180 days suspended.

One of the conditions in the deferred sentencing agreement was that Ririe "[c]omply with OCS requirements/recommendations, including any case/safety plan in effect." This provision of the deferred sentencing agreement stated:

Defendant agrees to abide by the following additional conditions:

a. Comply with OCS requirements/recommendations, including any case/safety plan in effect. Compliance with OCS includes, but is not limited to, the following:

i. Contact and communication with D.R. . . . only as authorized/approved/recommended by OCS.

ii. Report without delay to OCS any injuries to D.R. while D.R. is in Defendant's custody or care, or otherwise as soon as possible if Defendant observes or otherwise becomes aware of any such injuries.

The only other condition that Ririe was required to meet was payment of a $250 fee to the Municipality.

In a separate email to Ririe's defense attorney, the assistant municipal prosecutor appeared to indicate that the Municipality would dismiss the criminal case if OCS closed its case. The email stated:

> [I]f we get to a point during the DSA [deferred sentencing agreement] term where OCS has fully closed its case where your client and D.R. are concerned — and she has otherwise fully complied with all of her other DSA [deferred sentencing agreement] conditions — then MOA [the Municipality] upon confirming all of that will proceed with filing a dismissal at that juncture.

*The child-in-need-of-aid case is dismissed*

Seven months later, in September 2016, the child-in-need-of-aid case was dismissed upon Ririe's unopposed motion. The dismissal order noted that OCS did not oppose the dismissal and the court found there was "good cause to dismiss consistent with the welfare of the children and family." Ririe later requested that OCS overturn the substantiated findings of "mental injury and physical abuse" entered against her. OCS granted her request and changed the findings to "not substantiated."

Despite the uncontested dismissal of the child-in-need-of-aid case, the Municipality did not dismiss the criminal case. Instead, it argued that Ririe was in violation of the deferred sentencing agreement because (according to the Municipality) she had not fully complied with the OCS requirements. The Municipality alleged multiple violations of the OCS requirements, but only two are relevant to this appeal: (1) that Ririe failed to alert OCS regarding her psychological evaluation (a component

of the parenting assessment) so that OCS could provide collateral information to the evaluator; and (2) that Ririe failed to obtain a mental health evaluation of D.R.'s sibling, who was believed to have possibly injured D.R.

The district court held an evidentiary hearing across two days in August and October 2017. Ririe and her former OCS caseworker testified regarding the parenting assessment and the sibling's mental health evaluation.

### *Testimony regarding the parenting assessment*

The caseworker testified that, early in the case, she told Ririe that Ririe had to complete a psychological evaluation as part of the parenting assessment and that OCS needed to provide collateral information to aid in the evaluation. According to the caseworker, Ririe's child-in-need-of-aid attorney set up the evaluation without proper notice to OCS. As a result, OCS was unable to provide collateral information to the evaluator. The caseworker testified that this meant that the evaluator did not ask some specific questions tailored to Ririe that OCS would have wanted the evaluator to ask and that the evaluation — although completed — did not serve the purpose OCS wanted it to serve.

The caseworker acknowledged that the evaluation and the parenting assessment were considered complete months before the deferred sentencing agreement was entered into. The record also shows that Ririe was not told to complete another psychological evaluation or told that the parenting assessment was considered incomplete.

Ririe testified that she was unaware of any issue relating to OCS's ability to provide collateral information to the evaluator. Ririe testified that her attorney arranged for the evaluation to occur in a conference room at her attorney's office, and

Ririe signed a release of information and gave it to her attorney. It was her understanding from her attorney that OCS had, in fact, provided collateral information, although she conceded she had no direct knowledge of this.[1]

*Testimony regarding the sibling's mental health evaluation*

The caseworker testified that Ririe had told her that one of D.R.'s siblings (who was a toddler) had caused D.R.'s injuries. Ririe said she had started to look into getting the sibling a mental health evaluation, and the caseworker agreed that this was an appropriate way to respond. The caseworker acknowledged that Ririe scheduled the evaluation, and the mental health agency communicated with the caseworker and requested collateral information from her. But the caseworker testified that she later received multiple calls regarding Ririe either not showing up to the evaluation or rescheduling the evaluation and then cancelling. According to the caseworker, the evaluation was still not done at the time the child-in-need-of-aid case was dismissed.

Ririe testified that there *was* an evaluation and that the agency had determined that the sibling did not meet the agency's qualifications for therapy. Ririe agreed with this determination because the sibling's behavior had improved in the interim. Ririe acknowledged that she missed multiple appointments before finally bringing the sibling in for the evaluation. Ririe also provided a letter from the evaluating agency confirming that Ririe met with its staff in July 2016 and that "[b]ased

_____

[1] In her later motion for reconsideration, Ririe attached an email from her therapist to the caseworker dated months before the deferred sentencing agreement. In the email, the therapist acknowledged having received and reviewed a packet of collateral information from OCS, and she stated that this collateral information did not change her assessment of Ririe's parenting abilities.

on the information [Ririe] provided at that time, [it] declined to intake [the sibling] into services."

When the caseworker was shown this letter, she testified that it matched her view that no true evaluation was done because Ririe had not thought one was necessary.

*The district court's order and Ririe's motion for reconsideration*

Based on the testimony elicited at the evidentiary hearing, the Municipality argued that Ririe was in violation of the deferred sentencing agreement because she had not fully complied with the OCS requirements and recommendations. Ririe argued that she had complied with her OCS case plan, as evidenced by the dismissal of her OCS case, and she asserted that she was not in violation of the deferred sentencing agreement.

The district court found that both Ririe and the caseworker were credible, but that Ririe's view of her compliance was irrelevant, and it was the caseworker's and OCS's view of Ririe's compliance that was material. The court issued a written order, finding that Ririe was in violation of the deferred sentencing agreement because she had failed to give OCS the chance to provide collateral information to the agencies who completed the mental health evaluations of Ririe and D.R.'s sibling.

Ririe moved for reconsideration. In her motion for reconsideration, Ririe argued that completing the parenting assessment could not be considered a condition of the deferred sentencing agreement because that OCS requirement was already complete by the time the parties entered into the deferred sentencing agreement.

Ririe also argued that she had substantially complied with the OCS requirement that she get a mental health evaluation for D.R.'s sibling. She pointed out that the record showed that she scheduled and eventually obtained the evaluation, as

she was required to do. And the record did not show that she had ever been told that delivering collateral information to the agency was part of her responsibility. Ririe also pointed out that her child was in OCS custody at the time and OCS was aware that the evaluation had been scheduled and therefore could have provided the collateral information to the agency.

Lastly, Ririe argued that it was error for the court to defer to the caseworker's personal view of whether Ririe had complied with the OCS requirements and recommendations. Ririe argued that this was a question that the court was required to decide independently based on the evidence presented at the hearing.

The district court summarily denied Ririe's motion for reconsideration without responding to any of her arguments.

*Why we vacate the district court's order*

On appeal, Ririe argues that the district court erred when it found that she had violated the terms of the deferred sentencing agreement. She asserts that she substantially complied with the terms of the agreement, as evidenced by the dismissal of her OCS case and her own testimony, which was found credible by the district court. The Municipality argues that the district court's findings that Ririe violated the agreement are supported by the record and not clearly erroneous.

Neither party addresses the central issue in this case, which is what substantial compliance means in the context of this deferred sentencing agreement and what the terms of the agreement were in the first place.

A deferred sentencing agreement, like a plea agreement, is essentially a contract between a defendant and the government.[2] If a dispute arises concerning the terms of the agreement, the trial court must make findings regarding the existence and meaning of those terms.[3] When the terms of the agreement are ambiguous, "the court is required to construe the ambiguity against the State, because the State is the party with the greater bargaining power."[4]

If one party alleges that the other party has violated the agreement, the trial court must make findings regarding the asserted breach.[5] If a breach is found, the court must then decide whether the breach was "material."[6] Whether a breach is material is ultimately a question of law, which is reviewed *de novo*.[7]

Here, the agreement required Ririe to "[c]omply with OCS requirements/recommendations, including any case/safety plan in effect." It is clear from Ririe's testimony that she believed she had complied with this condition, as

---

[2]   *See Dutton v. State*, 970 P.2d 925, 928 (Alaska App. 1999) (citing *Closson v. State*, 812 P.2d 966, 970 (Alaska 1991)).

[3]   *Id.*

[4]   *Anthony v. State*, 329 P.3d 1027, 1032 (Alaska App. 2014); *see also United States v. Taylor*, 961 F.3d 68, 81 (2nd Cir. 2020) ("We construe plea agreements strictly against the government and do not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness.") (quoting United *States v. Wilson*, 920 F.3d 155, 162 (2nd Cir. 2019)); *United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019) ("Ambiguities in a plea agreement must be construed against the government.") (quoting *United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002)).

[5]   *Dutton*, 970 P.2d at 928.

[6]   *Id.*

[7]   *Id.* (citing *Closson*, 812 P.2d at 974).

confirmed by the dismissal of her child-in-need-of-aid case (and OCS's non-opposition to that dismissal). Ririe's interpretation of this condition is further supported by the municipal prosecutor's email, the only extrinsic evidence of the parties' understanding of the agreement in the record. The prosecutor's email strongly suggests that the parties understood that dismissal of the OCS case within the nine months contemplated by the deferred sentencing agreement would result in dismissal of the criminal case.

This interpretation of the deferred sentencing agreement is also consistent with the terms of the agreed-upon conditional sentence. The agreed-upon conditional sentence — which would only be imposed if Ririe was found to have violated the agreement — consisted of a probationary sentence *and* various requirements to "comply with OCS requirements/recommendations." The sentence also included a provision that Ririe have contact with D.R. "only as allowed/approved by OCS." In other words, the deferred sentencing agreement clearly contemplated that Ririe would only be sentenced under the agreement if the OCS case was still ongoing.

Given the dismissal of the OCS case, it is not clear why the Municipality believed that Ririe was in violation of the terms of the deferred sentencing agreement. Although the evidentiary hearing suggested that Ririe's caseworker had quibbles about Ririe's compliance with certain OCS requirements and recommendations, it was undisputed that OCS as an entity had non-opposed the dismissal of Ririe's OCS case and had returned full custody of her children to her. It was also undisputed that OCS had changed their findings from "substantiated" to "not substantiated."

In any event, even assuming that dismissal of the OCS case did not constitute compliance with the deferred sentencing agreement, we find no basis in the record for the trial court's finding of a material breach.

In its written order, the district court found that Ririe had failed to substantially comply with two OCS requirements — the mental health evaluation component of the parenting assessment and the mental health evaluation of the sibling. But the record does not support either finding.

First, there is nothing in the record to suggest that the parenting assessment was even part of the deferred sentencing agreement. It was undisputed that Ririe had completed the psychological evaluation required for the parenting assessment prior to the parties entering into the deferred sentencing agreement, and there was no indication that Ririe had ever been told that the evaluation was incomplete or that she had to redo the evaluation after the deferred sentencing agreement was made. Given this undisputed record, it was error for the district court to conclude that Ririe's alleged failure to obtain adequate collateral information for the already completed evaluation constituted a breach of the agreement.

It was also error for the district court to find that Ririe's handling of the mental health evaluation for D.R.'s sibling constituted a material breach of the deferred sentencing agreement. The district court found that Ririe had "not giv[en] OCS the chance to provide collateral information" to the mental health professionals charged with doing the evaluation. But this finding is not supported by the record. At the evidentiary hearing, the caseworker testified that she had communicated with the assessing agency regarding the evaluation and she did, in fact, have an opportunity to provide collateral information to the agency. The caseworker's actual complaint appears to have been that Ririe had not done enough to secure the therapy that she (*i.e.*, the caseworker) believed the sibling needed. But it does not appear that OCS

shared the caseworker's view.[8] Nor is it clear what else Ririe was supposed to do to fulfill this requirement.

In sum, the record does not support the district court's finding that Ririe violated the deferred sentencing agreement. The Municipality's allegations of a material breach also appear to be premised on an unreasonable interpretation of the deferred sentencing agreement. Given this record, we conclude that Ririe did not violate the deferred sentencing agreement and that she is therefore entitled to withdraw her plea.[9]

*Conclusion*

Ririe's sentence is VACATED and this case is REMANDED to the district court for withdrawal of Ririe's plea and dismissal of her criminal case.

---

[8] Indeed, there is nothing in the record to suggest that the sibling's mental health evaluation ever became a formal part of the case plan.

[9] We note that the deferred sentencing agreement requires a $250 payment to the Municipality. The parties do not discuss this condition. To the extent it has not yet been paid, it should be paid before Ririe is allowed to withdraw her plea.